LOUIS M. BOURNE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46326. Promulgated August 12, 1931.

*Leon F. Cooper, Esq.*, for the petitioner.
*O. J. Tall, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: The first issue arises from the claim of the petitioner to an allowance as a deduction of $1,200 paid by him as hospital and medical charges occasioned by an attack of arthritis. Section 214 (a) of the Revenue Act of 1926 provides, in part, as follows:

(a) In computing net income there shall be allowed as deductions:

\*       \*       \*       \*       \*       \*       \*

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit, though not connected with the trade or business; but in the case of a nonresi-

dent alien individual only if the profit, if such transaction had resulted in a profit, would be taxable under this title. No deduction shall be allowed under this paragraph for any loss claimed to have been sustained in any sale or other disposition of shares of stock or securities where it appears that within thirty days before or after the date of such sale or other disposition the taxpayer has acquired (otherwise than by bequest or inheritance) or has entered into a contract or option to acquire substantially identical property, and the property so acquired is held by the taxpayer for any period after such sale or other disposition. If such acquisition or the contract or option to acquire is to the extent of part only of substantially identical property, then only a proportionate part of the loss shall be disallowed;

(6) Losses sustained during the taxable year of property not connected with the trade or business (but in the case of a nonresident alien individual only property within the United States) if arising from fires, storms, shipwreck, or other casualty, or from theft, and if not compensated for by insurance or otherwise. The basis for determining the amount of the deduction under this paragraph, or paragraph (4) or (5), shall be the same as is provided in section 204 for determining the gain or loss from the sale or other disposition of property.

The petitioner contends that sums spent as medical and hospital expenses are losses within the meaning of either subsection (4) or subsection (6) of section 214 (a). He maintains that the practice of law is a "business" and that his talents and ability to earn constitute his "capital" and that, hence, any loss of capacity to earn due to disease or an accident is an impairment of capital. He maintains in the alternative that his illness was a casualty.

Section 215 (a) of the said act provides that:

(a) In computing net income no deduction shall in any case be allowed in respect of—

(1) Personal, living, or family expenses; * * *

Petitioner has advanced no argument or theory that persuades us that this item does not fall within the inhibitions of the above section. The item is not a proper deduction.

In his second allegation of error the petitioner claims that he is chargeable with only the amount he individually received from fees as a member of the law firm of Bourne, Parker & Jones and not with his one-third share of the total earnings of the partnership. Section 218 (a) of the Revenue Act of 1926 provides as follows:

(a) Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year, or, if his net income for such taxable year is computed upon the basis of a period different from that upon the basis of which the net income of the partnership is computed, then his distributive share of the net income of the partnership for any accounting period of the partnership ending within the taxable year upon the basis of which the partner's net income is computed.

The petitioner admits that the partnership agreement under which he practiced law as the senior member of Bourne, Parker & Jones specified an equal division of profits during the years following 1922 and included the year 1926, but claims that this provision fell into disuse and that no adjustment had ever been made between members of the firm to give effect to the original agreement. It is evident that the firm did not keep its books on a strictly businesslike basis, but it is obvious that there were sufficient data from which a total partnership income of $24,053.24 in 1926 was calculated. Any irregularities in the firm's method of conducting its own affairs are matters to be settled by the members. We are not concerned with how inequalities in their incomes may be adjusted. Under the agreement admittedly in force during 1926 each member of the firm was entitled to one-third of the profits and his distributive share must be included in computing his income tax, whether actually distributed or not.

The petitioner returned the sum of $25,000 as having been received during 1926 as the cash payment of 125 acres of land in Chunn's Cove, sold to F. L. Seeley. The record discloses that $5,000 of this amount was actually paid to petitioner as "earnest money" on November 25, 1925, and the remainder on January 19, 1926, when the deed to the property, dated November 24, 1925, was delivered by the grantor. The petitioner now claims that the $5,000 so received should have been included in his income-tax return for 1925 and consequently excluded from the computation of his income tax for 1926.

Under the facts here we are of the opinion that the sale was not consummated until the delivery of the deed in January, 1926. The fact that the deed and mortgage notes bore date of November 24, 1925, is not determinative. All that had been done preceding that time was conditional and subject to being nullified by an adverse finding as to title. So far as we are informed the payment of $5,000 would have been repayable had the title been disapproved. Petitioner did not obtain the unconditional right to retain this sum until the delivery of the deed. It was properly included in 1926 income.

We have found as a fact that the fair market value of the 88-acre tract of land acquired by the petitioner in 1913 was $100 per acre as of March 1, 1913. In arriving at this figure of value we have accorded to the opinion testimony of the several witnesses produced by petitioner such weight as we feel it was entitled to. These witnesses were not introduced as experts, but were permitted to express an opinion as that of one familiar with the property. These opinions, which were singularly uniform among the witnesses, were not sup-

ported by any theory or basis of computation and did not commend themselves as being entitled to much weight. They were not based on knowledge of sales. Similarly, because of differentiating factors, the evidence of other sales introduced by petitioner is not persuasive. Far more persuasive is the fact that petitioner, at approximately March 1, 1913, actually bought this land for $5,000. Petitioner had acted as attorney for both the trustee and the executrix. He occupied a position of confidence and trust with relation to the property. He was familiar with the property and, presumptively, with its value. To hold that on February 14, 1913, he bought from the very parties who placed him in this position of trust for $5,000 property which was actually worth some $43,000, as now contended by him, would be tantamount to finding him guilty of perpetrating a gross fraud on those who trusted him. Also persuasive is the corroborative fact that petitioner later bought contiguous or adjacent-lying land at figures fairly commensurate with the value found.

When all the evidence is weighed and accorded such weight as it seems to merit, we are not persuaded that the land had on March 1, 1913, any such value as is asserted by petitioner. Where, subsequent to March 1, 1913, property has appreciated greatly in value, it is not easy for a witness to eject from his mind all consideration of such subsequent events and place himself fairly in the same position he occupied at the basic date for the purpose of valuing the property. In the instant case, when this is done and all pertinent factors are duly considered, we believe the value found represents the true fair market value.

The respondent asserts as an alternative issue that the sale of that tract to the petitioner was made on March 8, 1913, and bases his contention on the fact that a deed of trust securing the purchase money was acknowledged and recorded on that date. The deed from Sexton and Mrs. Maddux to the petitioner was dated February 14, 1913, and acknowledged by them on February 20, and February 22, 1913, respectively. No date of delivery was proved. The formal recordation of a deed does not determine the date of sale of the property it conveys. Nor is the date of the acknowledgment of a mortgage, given to secure money borrowed to purchase the property, conclusive of the date on which the money was actually borrowed. We are of opinion that respondent has not established his contention as to this issue, the burden of proving which rested on him.

*Judgment will be entered under Rule 50*