Louis Karsch, Petitioner, *v.* Commissioner of Internal Revenue, Respondent

Docket No. 10471. Promulgated June 30, 1947.

*Leslie Handler, Esq.,* and *Elias Moss, C. P. A.,* for the petitioner.
*William B. Springer, Esq.,* for the respondent.

1330

## OPINION.

Opper, *Judge*: Under section 182, Internal Revenue Code, a partner is required to include in his net income "whether or not distribution is made to him  *  *  *  his distributive share of the ordinary net income of the partnership."   As of July 31, 1943, when petitioner for the first time withdrew from the partnership at will of which he was then a member and sold out his interest to his two former associates, there had been a period of six months since the end of the last partnership fiscal year for the accumulation of earnings as to which petitioner was entitled, by virtue of his membership in the partnership, to his proportionate distribution.   Omitting reference to the amount of such profits or to the year in which they are taxable, even petitioner

does not contend that no profits were earned during the period described.

We have been referred to no authority indicating that the mere sale of a partnership interest converts a partner's distributive share in past earnings upon which no tax has been paid into a capital item or relieves him from the necessity of paying a tax thereon as ordinary income. The rule in fact appears to be to the contrary. "Except for the 'purchase' and release, all his collections would have been income; the remaining partners would merely have turned over to him his existing interest in earnings already made * * * The 'purchase' of that future income did not turn it into capital, any more than the discount of a note received in consideration of personal services." *Helvering* v. *Smith* (C. C. A., 2d Cir.), 90 Fed. (2d) 590, 592; see *Bull* v. *United States*, 295 U. S. 247, 256.[1] And it scarcely requires the citation of authority to demonstrate the commonly applicable principle that no anticipatory assignment of income already earned can relieve the assignor of tax thereon. E. g., *Helvering* v. *Eubank*, 311 U. S. 122. We think it must be concluded that petitioner was taxable on his share of the income actually earned by the partnership to the date of his withdrawal, not as capital gain, but as a part of his ordinary income.

If the partnership had continued, instead of being dissolved by petitioner's withdrawal, its fiscal year would not have ended until February of the following calendar year; and under the provisions of section 188, Internal Revenue Code,[2] the partnership income of that fiscal year might have been subject to inclusion in petitioner's then current taxable year, which would have been 1944, rather than 1943. Indeed, it has been held that where a partnership is continued after dissolution for purposes of liquidation, and as to surviving partners who continue the business after withdrawal by death or resignation, the partnership's fiscal year may proceed without change from the previous periods. *Mary D. Walsh*, 7 T. C. 205.

But here the old partnership was not only dissolved, but it was liquidated and terminated as of the date of petitioner's withdrawal. The business was continued, but not, even for purposes of liquidation,

---

[1] "* * * Let us suppose Bull had, while living, assigned his interest in the firm, with his partners' consent, to a third person for a valuable consideration, and in making return of income had valued or capitalized the right to profits which he had thus sold, had deducted such valuation from the consideration received, and returned the difference only as gain. We think the Commissioner would rightly have insisted that the entire amount received was income."

[2] SEC. 188. DIFFERENT TAXABLE YEARS OF PARTNER AND PARTNERSHIP.
If the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner.

by the old partnership. As far as petitioner was concerned, the venture was terminated and he so regarded it. The few remaining details, which affected only the total selling price and not the earnings and profits already secured were to be handled by the continuing partners, not as members of the old firm, but as the purchasers and new proprietors of the old assets.

It may be that for that reason petitioner could have postponed until the following year the final report as to his capital gain. See *Bull* v. *United States, supra.* This is a question we need not consider, since petitioner did not then nor does he now so treat the transaction. But as to the partnership earnings to which petitioner was entitled as a partner, nothing remained to be done when the transaction was closed on August 4, 1943, and petitioner was paid in cash the amount found to be due. As to petitioner, the retiring member of a business entity which was then and there being closed, completed, and wound up, the time for a partnership accounting had arrived and the period for which the accounting was to be had had been brought to an end.

A close analogy to the present facts is to be found in *Guaranty Trust Co.* v. *Commissioner*, 303 U. S. 493. There the partnership was dissolved by the death of the partner, while here the same result ensued from petitioner's retirement from the firm. New York Partnership Law, secs. 60, 62, 73. But in each case the partner's earnings and profits for an uncompleted partnership fiscal year were ascertained and credited during the calendar year for which the deficiency was determined. And in the present case they were actually paid during that year. Notwithstanding that if the partnership had continued its fiscal year would not have ended until the following calendar year, it was held in the *Guaranty Trust* case that the partner's distributive share of the income was taxable to him in the year in which the partnership terminated by his death. The opinion, to be sure, was not based squarely on the conclusion that "the partnership 'taxable year' within the meaning of section 182 (a) includes in the special circumstances of this case an accounting period of less than 12 months," here from February 1, 1943, to the date of termination, July 31, 1943. But in *Anne Jacobs*, 7 T. C. 1481, it was expressly held that "such fractional period is a taxable year within the meaning of section 48 (a), *supra*." This furnished the distinction from such cases as *C. A. Tooke*, 17 B. T. A. 690, which was decided under an earlier and different revenue act. . The result is that petitioner's distributive share of the income of a partnership which was dissolved and terminated in the calendar year 1943 is taxable to him as income of that year.

Finally, petitioner resists respondent's determination as to the amount of partnership profits for the period in issue. Laying to one side any question of burden of proof or of the presumptive correct-

ness of respondent's determination, we are satisfied that the record—as made in part by petitioner's own witness—supports the amount of partnership income and of petitioner's one-third share thereof as determined by respondent. The figures appearing in our findings were given by petitioner's accountant. He failed to arrive at respondent's total only because of a refusal to give effect to any closing inventory.

But the partnership itself was obviously a business in which inventories were an income-computing factor. This appears from the tax return itself and inferentially from the method of computation employed by petitioner's accountant. Such a procedure for computing income requires that, from opening inventory and raw materials purchased, there be deducted the amount of closing inventory before the cost of goods sold can be arrived at. See, e. g., income tax Form 1065. Petitioner's share is to be determined from a computation of the partnership's own income, which it is required to make in the same way as though it were itself the taxpayer. Internal Revenue Code, secs. 181–183, 187. It follows that no accurate computation of the partnership income for the period in question, and hence of petitioner's distributive share thereof, could be made without taking account of the closing inventory for the period. For the reasons stated, we are satisfied that the amount of this income, as set forth in our findings, established by the record, and determined by the respondent, is correct.

*Decision will be entered for the respondent.*