Frank J. Johnson v. Commissioner.
Johnson v. Commissioner
Docket No. 17694.
United States Tax Court
1950 Tax Ct. Memo LEXIS 237; 9 T.C.M. (CCH) 277; T.C.M. (RIA) 50083; March 29, 1950
Douglas L. Barnes, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency of $31,752.43 in petitioner's income tax for 1943. It is a companion case to Helen Davis, Docket No. 17673 [9 TCM 263], decided this date. The questions in issue here are whether the Commissioner erred in determining that petitioner is taxable as a partner on one-half of the income of the Helen Davis partnership for the period January 1 to August 31, 1943, when the partnership was dissolved by an agreement of the parties and, if so, whether the Commissioner erred in limiting petitioner's deductible loss on the sale of his interest in the partnership to $1,000 under the long-term capital loss provisions of the statute. The Helen Davis case above referred to involved *238 only the question of an adjustment in merchandising inventory at the beginning of the four months period September 1 to December 31, 1943, following the dissolution of the partnership, as affecting the income of Helen Davis for that period. At the hearing counsel stipulated that much of the documentary evidence submitted in the Helen Davis case should also be considered as evidence in the instant case. Other facts pertaining to this case only were stipulated and oral testimony was given on behalf of this petitioner. The proceedings were not consolidated because of the adverse interests of the taxpayers. Findings of Fact Petitioner is a resident of Tacoma, Washington. He filed his individual income tax return for 1943 with the collector of internal revenue for the district of Washington. Petitioner was married to Helen Davis in 1939. At the time of the marriage she was the owner of a women's ready-to-wear clothing business, operating several shops located in Tacoma and near-by places. Petitioner gave her financial assistance and the use of his credit from time to time. Prior to May 3, 1941, he had advanced to her a total of $33,550. On that date, due to marital differences, *239 they entered into a property settlement agreement which purported to settle all of their separate and community property interests. The agreement provided that petitioner and Helen Davis were to become partners in the "Helen Davis" shops but that the business would be under the management and control of Helen Davis and that petitioner's interest therein "shall be solely to receive back his capital investment, plus future profits." The agreement provided in part as follows: "WHEREAS, it is stipulated by the parties hereto that certain of their community interest in the chain of 'Helen Davis', women's apparel shops, are in actual fact separate interests by reason of the initial venture being started before coverture, with the initial idea of the said business to be operated and controlled by first party, with second party simply to be a financial backer; that, nevertheless, for the purpose of this agreement it will be considered that all of the business of the 'Helen Davis' shops is community property * * *. "NOW, THEREFORE, the parties hereto contract and agree as follows: "That the entire business venture now operated under the name of 'Helen Davis' and consisting of five units *240 together with a lease for a sixth unit to supplant the present Tacoma unit, is, by this agreement, to be removed from its community status and to become the separate property of the parties hereto, under the following division and terms, to-wit: "1. First party and second party shall become co-partners in the conduct of this business only upon the following terms and limitations: (A) The first party shall be the sole manager and operator in the conduct of this said business, with full control in any and every sense, except that she may not make a capital sale or dissipation of any unit without the consent of second party, but there shall be no restriction upon her as to policy, personnel, merchandising, or any other phase of management. The interest of second party shall be solely to receive back his capital investment, plus future profits, which said capital investment is set up and agreed to as of this date to be in the sum of Thirty-three Thousand, Five Hundred and Fifty Dollars ($33,550.00), without interest. (B) This contract contemplates and agrees that all of the net profits from this business shall be applied to the retirement of this said indebtedness of $33,550.00, *241 and, if at the conclusion of the term of the longest instant lease, being, or believed to be, approximately five years from July 15, 1941, this entire amount has been paid to second party by this accumulation of net profit which shall be placed in a capital reserve for that purpose, then the business shall become the sole and separate property of first party, under the terms hereinafter set out. * * *
(E) It is stipulated that the net worth of the said business at this time is Twenty-one Thousand ($21,000.00) Dollars, and that first party shall have this as her sole and separate property at the end of this five year period, and that the net worth of the business at that time above and beyond this said $21,000 shall be divided equally between the parties hereto; provided, that unless this business is dissolved and these funds realized and paid upon this basis at the option of first party, she may either within a period of sixty days pay off the interest of second party in this business, or she may elect to have second party continue this proportional interest in the business and, thereafter, second party shall be entitled to any dividend or profit on that basis, but he may not *242 withdraw his interest from the business until the ultimate dissolution or sale of the business by first party, it being stipulated that this proviso shall bind the heirs or successors of second party. (F) Second party agrees not to withdraw his financial support presently extended to this business within the period of this five-year agreement, and to continue the use of his present extended line of credit." It was further provided in the agreement that during the life of the contract Helen Davis should be entitled to a salary of $250 per month, plus reasonable traveling expenses. This agreement was incorporated in an interlocutory order issued September 2, 1941, in a divorce suit brought by Helen Davis in the King County Superior Court at Seattle, Washington. A final decree of divorce was entered by the court on May 23, 1942. After the agreement of May 3, 1941, the merchandising business was continued under the sole management of Helen Davis. A partnership return was filed in the name of "Helen Davis" for the calendar year 1941. That return showed gross receipts from the business of $247,589.83 and distributable income of $21,032.17. The profits up to the effective date of the *243 partnership agreement were allocated to Helen Davis and those for the remainder of the year were shown as divided equally between her and petitioner. Her share was $16,182.05 and petitioner's $4,850.12. The 1942 return showed receipts from business of $389,222.92 and net profits of $56,332.32, divided equally between the partners. The 1943 return, filed November 5, 1943, covered the period January 1 to August 31, 1943, inclusive. It showed gross receipts of $367,524.89 and net profits of $61,992.80 which were allocated to the partners in equal amounts. In the Fall of 1942 petitioner brought suit in the Superior Court of Pierce County, Washington, for an accounting of partnership profits and for the appointment of a receiver for the "Helen Davis" business. This petition was dismissed. The court entered its findings of fact and conclusions of law March 4, 1943, finding that a valid partnership had been entered into by the petitioner and Helen Davis under the agreement of May 3, 1941, and that the partners were bound by the terms of that agreement, as subsequently modified by them. It directed that the profits of the partnership business be set aside in a separate account until a fund *244 of $33,550 had been accumulated for repayment of petitioner's advances to the business but that this money was to be withheld and used in the business until termination of the five year period specified in the May 3, 1941, agreement, unless the parties should otherwise agree. The court further directed that the income taxes of both partners on income derived from the partnership business should be paid out of partnership earnings and charged as partnership expenses. In September 1943 the petitioner and Helen Davis entered into a further agreement by which Helen Davis purchased his interest in the business for a cash sum of $50,000. This agreement provided in part as follows: "The parties hereto, as co-partners, have since May 3, 1941, been the owners of certain ladies' apparel shops known as the 'Helen Davis' shops. * * *
"1. Second party does hereby sell and convey unto first party his entire interest in the co-partnership known as the 'Helen Davis' shops, which is more particularly set forth in that certain Community Property Settlement of May 3, 1941, entered into between the parties hereto, and the first party does hereby purchase from second party his entire interest *245 in said co-partnership for the sum of Fifty Thousand ($50,000.00) Dollars paid in cash in connection with the execution of this agreement. The payment of this amount shall include the sum of Thirty-Three Thousand Five Hundred Fifty ($33,550.00) Dollars, which has heretofore been advanced by second party to said co-partnership business referred to in paragraph (A) of said agreement of May 3, 1941. Said sum shall further include any and all accumulated and undivided profits and other moneys of every kind and nature to which second party may be entitled under and by virtue of the co-partnership agreement, it being the intent hereof that the payment of said sum of Fifty Thousand ($50,000.00) Dollars shall be considered as a final payment and adjustment of the interest to date of second party in said co-partnership, except as is further provided for herein. * * *
"3. Effective as of September 1, 1943, the co-partnership which has heretofore existed between the parties hereto relating to the said 'Helen Davis' shops, shall be dissolved, and said entire business shall become the property of the first party, Helen Davis Onge, as of said date. * * *" In addition to the $50,000 mentioned *246 in the agreement, Helen Davis agreed to pay, and did pay, to petitioner before December 31, 1943, $5,475.82, representing the two remaining quarterly income tax payments on his share of the partnership profits for 1942. The first two quarterly payments had been paid out of partnership funds in June 1943. The capital account of petitioner in the Helen Davis partnership as of August 31, 1943, as determined by an examining revenue agent, was $87,605.67, made up of the following items: Original investment, May 3, 1941
$33,550.00
1941 partnership profits
2,279.61
1942 partnership profits
28,257.62
1943 partnership profits
29,996.40
Profit from sale of automobile
37.64
Total
$94,121.27
Less: Withdrawals
Attorney fee in divorce
$ 150.00
Withdrew for income tax during 1942
822.53
Withdrew for income tax prior to July 1943
5,475.82
Contributions, 1943
67.25
Total
$6,515.60
6,515.60
Balance August 31, 1943
$87,605.67
The Commissioner determined that the petitioner was taxable on his share of the partnership profits, amounting to $29,996.40, for the period January 1 to August 31, 1943. He further determined that petitioner sustained *247 a long-term capital loss on the sale of his interest in the partnership to Helen Davis, but that a deduction thereof is limited to $1,000 under section 117 of the Internal Revenue Code. In her return for the last four months of 1943, following the dissolution of the partnership, Helen Davis claimed a loss from the operation of the "Helen Davis" stores of $16,515.20. This loss was claimed to have resulted largely from inventory adjustments made after dissolution of the partnership. The merchandise inventory at August 31, 1943, as shown by the partnership books, was $155,666.56. No fiscal inventory was taken at that time but one was taken at the close of 1943, and as a result the book inventory was reduced by $9,030.65. Further losses were claimed to have resulted from a falling off of sales for the last four months of 1943 and from obsolescence of merchandise. Opinion LEMIRE, Judge: In this proceeding the parties have stipulated: "That the additions made by the respondent to the income of the business known as 'Helen Davis' in the deficiency letter covering earnings for the calendar years 1942 and the period ended August 31, 1943, which are before the *248 Court in this proceeding, are not contested by the petitioner herein except insofar as petitioner contends the inventory shown on the balance sheet as of August 31, 1943 is overstated, and also except insofar as petitioner contends that none of the income for the latter period was taxable to him. It is agreed that the ordinary net income of said business for the calendar year 1942 was in the amount of $59,515.25." Petitioner's relationship to the Helen Davis business was the same in 1943, up to August 31 of that year, as it was in 1941 and 1942. He does not contest his liability for tax on one-half of the partnership income for those years. Under section 182 of the Internal Revenue Code a partner is required to report his share of the partnership profits regardless of what disposition he may make of it. The petitioner insists that it was agreed between him and Helen Davis as a part of the partnership dissolution agreement of September 1943 that he would forego all interest in the partnership profits for 1943 and that she pay whatever income tax might be due thereon. However, there is no such provision in the written agreement. It recites that the petitioner *249 "does hereby sell and convey unto first party his entire interest in the co-partnership * * * for the sum of Fifty Thousand ($50,000.00) Dollars," and that the said sum included: "* * * any and all accumulated and undivided profits and other moneys of every kind and nature to which second party may be entitled under and by virtue of the co-partnership agreement, it being the intent hereof that the payment of said sum of Fifty Thousand ($50,000.00) Dollars shall be considered as a final payment and adjustment of the interest to date of second party in said co-partnership, except as is further provided for herein." We have found in the Helen Davis case that the business conducted under her name was a valid partnership for the period May 1, 1941, to August 31, 1943, and that the income thereof belonged to the partners, petitioner and Helen Davis, in equal shares. The evidence before us in this case does not contradict that finding or require any different conclusion. Furthermore, even if it had been expressly agreed that petitioner would forego his right to any of the partnership income for 1943 that would not relieve him of his liability for tax on his share of such income. A retiring *250 partner is taxable on his share of the partnership profits, as ordinary income, up to the time of his withdrawal from the partnership. Louis Karsch, 8 T.C. 1327; Dennis Halkias, 12 T.C. 1091. Actually, the petitioner did forego his rights to the undistributed partnership profits for 1941 and 1942, as well as 1943, except to the extent that they were included in the cash payment which he received from Helen Davis in terminating the partnership. As to the amount of the partnership income for the period in question, petitioner's only contention, acording to the stipulation, is that the partnership inventory at August 31, 1943, was overstated. Petitioner makes the argument in his brief that the partnership return which Helen Davis filed for the period January 1 to August 31, 1943, was false in that it overstated the partnership profits for that period and that there was a corresponding understatement of income in the return which she filed for the period of September 1 to December 31, 1943. He argues that there was a shifting of income from the latter to the prior period by reason of the overstated inventory. The petitioner is, of course, in no position to *251 question the correctness of the return filed by Helen Davis for the period September 1 to December 31, 1943, following the dissolution of the partnership. He does have the right to contest the partnership return for the period January 1 to August 31, 1943, since it affects his own income tax liability for that period and especially since he did not prepare or approve the return. The evidence before us, however, falls far short of showing that the partnership income was overstated in the 1943 return. The partnership inventories were based on cost or market, whichever was lower. The August 31, 1943, inventory of $155,666.56 represented the cost of merchandise then on hand. No physical inventory was taken at that time and there is no evidence of record to support petitioner's contention that the figure of $155,666.56 was incorrect. Whether or not the subsequent inventory adjustments, which contributed to the loss claimed by Helen Davis, for the period September 1 to December 31, 1943, were proper could have no effect on petitioner's tax liability. Petitioner's final contention is that any amount on which he may be held taxable as his share of partnership income for 1943 should be *252 allowed to him as an ordinary loss deduction of that year. The Commissioner has recognized that petitioner sustained a loss in 1943 of the difference between the amount of his capital account in the partnership and the amount which he received from Helen Davis for his partnership interest. However, he has treated the loss as a long-term capital loss resulting from petitioner's sale of his interest in the partnership and has limited his deduction to $1,000 under section 117, Internal Revenue Code. We think that the Commissioner's determination in this respect is correct. The sale or other disposition of an interest in a partnership is a capital transaction and the gain or loss thereon is subject to the limitations prescribed in section 117. H. R. Smith, 10 T.C. 398, affd., 173 Fed. (2d) 470, certiorari denied, 338 U.S. 818; Joseph L. Merrill, 9 T.C. 291, affd., 173 Fed. (2d) 310. The petitioner's interest in the Helen Davis partnership was limited, it is true, to his rights to recover his original capital of $33,550, plus one-half of the partnership profits for a period of five years. Those *253 rights, however, were substantial and were sufficient to constitute the petitioner as a partner in the business. They were property within the meaning of section 117, and the loss on their sale was subject to the limitations therein prescribed. Decision will be entered for the respondent.