Leola Johnson Bell v. Commissioner. David Arthur Bell v. Commissioner.
Bell v. Commissioner
Docket Nos. 33944, 33945.
United States Tax Court
1953 Tax Ct. Memo LEXIS 285; 12 T.C.M. (CCH) 440; T.C.M. (RIA) 53135; April 22, 1953
*285 Petitioner's interest in a partnership determined. Donald E. Dore, Esq., and Robert L. Collings, Esq., for the petitioners. J. L. Bailey, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent has determined deficiencies for the taxable year 1947 in the amounts of $2,507.23 and $2,592.72 against Leola J. Bell and David A. Bell, respectively. Separate returns were filed on a community property basis. The proceedings were consolidated for hearing and disposition. The principal issue is the amount of petitioner David A. Bell's distributable share of partnership income from the partnership of Morgan-Bell & Associates for the taxable year 1947. Findings of Fact David Arthur and Leola Johnson Bell are husband and wife presently residing in Killeen, Texas. During the period here involved they resided in Lake Charles, Parish of Calcasieu, within the collection district of Louisiana. As head of the marital community, David Arthur Bell will be referred to as petitioner. Petitioner and Emanuel Z. Morgan, during 1946 and through February 18, 1947, were equal partners in the operation of a general contracting business under the firm name of Morgan-Bell & Associates, *286 which business was also located in Lake Charles, Louisiana. Petitioner did not originally invest any funds in the business although he contributed professional knowledge and personal services. The partnership elected to keep its books and file its returns on the "completed contracts" basis of accounting. On February 19, 1947, all then existing contracts had been completed. On February 19, 1947, by a notarial act passed before two witnesses, the partnership was dissolved. Under the dissolution agreement petitioner sold and assigned all of his rights, title, and interest in the partnership to Morgan, who retained the right to continue to operate the business as a sole proprietorship under the firm name. Morgan agreed to liquidate all of the then existing liabilities owed to various and sundry creditors totaling approximately $29,000. The agreed consideration was $20,000, represented by a check for $10,000 on the partnership bank account and a $10,000 note payable when liquidation was completed, as well as transfer of the photostat and blueprint equipment, together with the related supplies inventory. Some time in 1948, the $10,000 note was renewed. On February 25, 1948, both petitioners *287 filed with the collector of internal revenue for the district of Louisiana separate individual income tax returns for the taxable year 1947, in accordance with the community property laws of that state, wherein they each reported adjusted gross income of $2,412.74, arrived at as follows Salaries
$1,262.73
Loss, City Blue Print
(3,852.68)
Income, Morgan-Bell & Associates
7,415.43
Total adjusted gross income
$4,825.48
One-half to each spouse
2,412.74 The distributive share of the partnership income above was determined by petitioner as follows: 1946 partnership income
$11,387.01
Less amounts withdrawn
8,802.44
Balance
$ 2,584.57
Check received Feb. 19, 1947
10,000.00
Amount reported above
$ 7,415.43
On December 28, 1948, Morgan-Bell & Associates filed with the collector of internal revenue for the district of Louisiana a delinquent partnership return of income for the period January 1 through February 18, 1947, disclosing income from completed contracts of $57,194.64, distributable to the partners as follows: Petitioner
$28,597.32
Morgan
28,597.32
Total
$57,194.64 The return, prepared by the partnership accountant, was executed by Morgan. Copy thereof was also furnished to petitioner. After an examination *288 of petitioners' individual income tax returns for the taxable year 1947 in conjunction with the 1947 partnership return of income, the Commissioner mailed to the petitioners statutory notices of deficiency disclosing additional income arrived at as follows: Statutory
Returns
Adjustments
Notices
Salaries
$1,262.73
$ $ 1,262.73
Loss, City Blue Print
(3,852.68)
697.50
(3,155.18)
Income, Morgan-Bell & Associates
7,415.43
21,181.89
28,597.32
Capital Loss, Morgan-Bell & Associates
(2,000.00)
(2,000.00)
Adjusted gross income
4,825.48
19,879.39
24,704.87
One-half to each spouse
2,412.74
9,939.69
12,352.43
Less standard deduction
500.00
500.00
Taxable Net Income
$2,412.74
$11,852.43 A long-term capital loss was determined by the respondent as follows: Original investment
$ None
1946 Income
11,387.01
1947 Income
28,597.32
Total
$39,984.33
Less withdrawals
1946
$7,153.04
1947
1,649.40
8,802.44
Investment - February 19, 1947
$31,181.89
Less Sales Price
20,000.00
Long-term capital loss
11,181.89
50% to be taken into account
5,590.95
Petitioners' capital gains (1947)
None
Statutory capital loss allowable
2,000.00
Capital loss carry-over
3,590.95 In arriving at said capital loss, no consideration was given to the depreciated or book cost of the equipment *289 and supplies inventory received by petitioner in the 1947 liquidation of the partnership. On October 31, 1950, petitioner obtained a default judgment from his former partner for the amount of the note, $10,000, together with interest, attorney fees, and costs. Opinion ARUNDELL, Judge: As the petitioner is not prepared to dispute that the partnership income was in an amount different from that determined by the respondent, which in fact was the same amount that was reported in the partnership returns, that amount must be accepted. Petitioner also testified that it was his understanding that he and his partner, Morgan, each had a 50 per cent interest in the partnership and were entitled to share equally in the profits. The partnership returns reported petitioner and Morgan as equal partners and the respondent has so found. In this posture of the case, it would appear that the petitioner is taxable on 50 per cent of the partnership income whether that income was so distributed or not. Sections 181, 182, and 183, [1] *290 Internal Revenue Code; Bourne v. Commissioner, 62 Fed. (2d) 648, affg. 23 B.T.A. 1288, certiorari denied 290 U.S. 650; Louis Karsch, 8 T.C. 1327. If we understand petitioner's argument, it is that he should not be so taxed because in fact he did not receive the $28,597.32 which constitutes his share of the income of the partnership for the year 1947. Before the dissolution of the partnership on February 19, 1947, petitioner had discovered that his partner, Morgan, had withdrawn from the partnership some $13,000 more than had petitioner and as Morgan would not permit petitioner to withdraw a like amount to even things up, petitioner concluded that the only course open to him was to bring the *291 partnership to an end. The partnership reported on a completed contracts basis and this fact accounted for the relatively large amount of income shown for the period from January 1st to February 19, 1947. Under the dissolution settlement, petitioner received $10,000 in cash and a note for $10,000, together with certain assets not material at this point, and in turn petitioner conveyed to Morgan his entire interest in the partnership. In these circumstances, petitioner would disregard the earnings of the partnership as such for the year 1947 and treat as income only the $10,000 in cash he received, the note in a like amount being disregarded in view of the fact that it was not paid. But the gain or loss from the sale of the partnership interest is a matter that calls for separate treatment and is not to be confused with the proper reporting of the income earned from the operation of the partnership. Nor does this record warrant a finding that the dissolution agreement between the partners served to change petitioner's share of the partnership earnings to an amount less than the 50 per cent attributed to him by the respondent for the taxable year 1947. On this issue the respondent is *292 sustained. We have set forth in our findings the method used by the respondent in determining petitioner's capital loss on the sale of an interest in the partnership. We think the respondent has followed the applicable statutes in reaching his determination on this point. Section 23 (e) and (g) [2] provides for the allowance of a loss computed in accordance with the provisions of section 117 and, as the loss was a long-term capital loss, section 117 (b) [3] *293 permits only 50 per cent of the loss suffered to be taken into account and by section 117 (d) (2), [4] on the facts present in this case, only $1,000 is allowable to each petitioner. The respondent is sustained. Decisions will be entered under Rule 50. Footnotes
1. SEC. 181. PARTNERSHIP NOT TAXABLE. Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. SEC. 182. TAX OF PARTNERS. In computing the net income of each partner, he shall include, whether or not distribution is made to him - * * *
(c) His distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b). SEC. 183. COMPUTATION OF PARTNERSHIP INCOME. (a) General Rule. - The net income of the partnership shall be computed in the same manner and on the same basis as in the case of an individual, except as provided in subsections (b), (c), and (d).↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * *
(e) Losses by Individuals. - In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise - (1) if incurred in trade or business; or * * *
(g) Capital Losses. - (1) Limitation. - Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117. ↩
3. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), * * *
(5) Long-Term Capital Loss. - The term "long-term capital loss" means loss from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such loss is taken into account in computing net income; * * *
(b) Percentage Taken into Account. - In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income: * * *
50 per centum if the capital asset has been held for more than 6 months. ↩
4. (d) Limitation on Capital Losses. - * * * (2) Other Taxpayers. - In the case of a taxpayer, other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the net income of the taxpayer of [or] $1,000, whichever is smaller.↩